IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JORGE FELICIANO-MONROIG, *et al.*, | |
| **Plaintiffs,** | |
| v. | CIVIL NO. 16-2810 (JAG) |
| AT&T MOBILITY PUERTO RICO, INC., *et al.*, | |
| **Defendants.** | |

OPINION AND ORDER

GARCIA GREGORY, D.J.

Plaintiffs Jorge O. Feliciano-Monroig ("Mr. Feliciano"), Madeline Salva Malaret, and Minor G.F.S. (collectively, "Plaintiffs") brought this action against AT&T Mobility Puerto Rico, Inc. ("AT&T") and Angel Rijos-Ortiz ("Mr. Rijos") (collectively, "Defendants")[1] alleging age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*; Puerto Rico Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, § 146 ("Law No. 100"); and Puerto Rico Law No. 115 of December 20, 1991, P.R. Laws Ann. tit. 29, § 194a ("Law No. 115"). Docket No. 34. Plaintiffs also brought claims under the Second Amendment to the U.S. Constitution and the right to privacy under the Constitution of Puerto Rico. *Id.* Finally, Plaintiffs assert claims for intentional infliction of emotional distress, defamation, and malicious prosecution under Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141-42. *Id.* Pending before the Court is Defendants' Motion for Summary Judgment

---

[1] Plaintiffs originally included AT&T of Puerto Rico Inc. as a defendant in this case. Docket Nos. 1; 4. Pursuant to Plaintiffs' Motion for Voluntary Dismissal, Docket No. 16, Partial Judgment was entered on June 27, 2017 dismissing without prejudice Plaintiffs' claims against AT&T of Puerto Rico Inc., Docket No. 20.

seeking dismissal of all claims. Docket No. 85. For the reasons stated below, Defendants' Motion

for Summary Judgment is hereby **GRANTED**, and Plaintiffs' case is hereby **DISMISSED WITH**

**PREJUDICE**.

## STANDARD OF REVIEW

A motion for summary judgment will be granted if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits if any, show that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

*See* Fed. R. Civ. P. 56(a). A fact is in genuine dispute if it could be resolved in favor of either party,

and it is material if it potentially affects the outcome of the case. *Calero-Cerezo v. U.S. Dep't of Justice*,

355 F.3d 6, 19 (1st Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986)).

The party moving for summary judgment bears the burden of showing the absence of a

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving

party has properly supported [its] motion for summary judgment, the burden shifts to the

nonmoving party . . . ." *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000)

(quoting *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997)). The non-movant must demonstrate

"through submissions of evidentiary quality [] that a trial worthy issue persists." *Iverson v. City of*

*Bos.*, 452 F.3d 94, 98 (1st Cir. 2006) (internal citations omitted).

In evaluating a motion for summary judgment, the Court must view the entire record "in

the light most hospitable to the party opposing summary judgment, indulging in all reasonable

inferences in that party's favor." *Winslow v. Aroostook Cty.*, 736 F.3d 23, 29 (1st Cir. 2013) (quoting

*Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir. 2000)). The court may safely ignore "conclusory

allegations, improbable inferences, and unsupported speculation." *Medina-Rivera v. MVM, Inc.*, 713

F.3d 132, 134 (1st Cir. 2013) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)). Throughout this process, courts cannot make credibility determinations or weigh the evidence, as these are jury functions and not those of a judge. *See Anderson*, 477 U.S. at 255; *Garcia-Gonzalez v. Puig-Morales*, 761 F.3d 81, 99 (1st Cir. 2014) (internal citations omitted).

## ANALYSIS[2]

### I.    Individual Liability Claims

Defendants argue, and the Court agrees, that Plaintiffs lack actionable claims against Mr. Rijos under the ADEA and Law 115 because there is no individual employee liability under these statutes. Docket No. 85 at 6-7; *see Otero-Merced v. Preferred Health Inc.*, 680 F. Supp. 2d 388, 390-91 (D.P.R. 2010). Plaintiffs concede this argument. Docket No. 95-2 at 13. Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' ADEA and Law 115 claims against Mr. Rijos.

### II.    Time-Barred Claims

Defendants contend that any discrete employment action taken against Mr. Feliciano before February 13, 2015 is not actionable pursuant to 29 U.S.C. § 626(d)(1)(B). Docket No. 85 at 7-10. Plaintiffs seem to concede this point. Docket No. 95-2 at 13 ("Plaintiff Feliciano-Monroig filed a discrimination charge with EEOC December 9, 2015, [sic] all disciplinary actions taken against Feliciano *after* February 13, 2015, took place within 300 days of the Charge filing date.");

---

[2] The Court includes its Findings of Fact as an attachment to this Opinion and Order. *See* Attachment # 1.

*id.* at 14 ("Plaintiffs allegations regarding any events before February 13, 2015, are not time-barred under Art. 1802/1803.").[3] The Court agrees.

The ADEA provides, in relevant part, that claimants seeking relief under the statute must file an EEOC charge alleging age discrimination "within 300 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1)(B). Discrete acts of discriminatory conduct occurring more than 300 days before the filling of an EEOC charge are time-barred. *Fontanez-Nunez v. Janssen Ortho LLC*, 447 F.3d 50, 55 (1st Cir. 2006); *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act."). In this Circuit, the following constitute discrete acts: termination, failure to promote, failure to assign work, negative performance evaluations, and letters of warning, among others. *Ayala v. Shinseki*, 780 F.3d 52, 57 (1st Cir. 2015).

Here, Mr. Feliciano first filed an EEOC charge on December 9, 2015. Any discrete act occurring 300 days before that filing, *i.e.* before February 13, 2015, must be dismissed as time-barred. This means that all counseling notices, written warnings, final written warnings, negative performance evaluations, and failure to assign work that occurred before that date are time-barred and, thus, not actionable.[4] As such, Plaintiffs' only actionable disciplinary action is the February 2, 2016 Final Written Warning issued by Store Manager Miranda.[5]

---

[3] Instead, Plaintiffs contend that events that occurred outside the 300-day window may be actionable as a hostile work environment claim pursuant to the continuing violation doctrine. *Id.* at 17. The Court shall address Plaintiffs' hostile work environment claim below.

[4] *See* Findings of Fact ¶¶ 31-45, 77, 107-08.

[5] Moreover, to the extent that the events surrounding Mr. Feliciano's November 3, 2014 call to AT&T's Ethics Hotline constitute a discrete discriminatory act, this claim also appears to be time-barred. Mr. Feliciano filed a complaint against Defendants in state court on November 2015, Civil No. D DP2015-0821,

Plaintiffs also allege the following discrete discriminatory acts: (i) that younger employees were promoted to management, while Mr. Feliciano was denied such promotions due to the disciplinary memoranda in his personnel file (failure to promote); and (ii) that, on at least one instance, the Store Manager gave corporate accounts to other Retail Sales Consultants, but not to Mr. Feliciano (failure to assign work). *See* Findings of Fact ¶ 118. Plaintiffs fail to provide any indication as to when these claims occurred, thereby preventing the Court from assessing whether these claims are also time-barred. Because the Court must view the record in the light most favorable to Plaintiffs, the Court shall assume without deciding that these claims occurred after February 13, 2015.

## III.    ADEA Claims

The Court now turns to the crux of Plaintiffs' Second Amended Complaint: unlawful age discrimination and retaliation.

Pursuant to the ADEA, it is "unlawful for an employer to fail or refuse to hire . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Under this statute, an employer may take an adverse action against an employee for any reason, fair or unfair, so long as the action is not motivated by an age-based discriminatory animus. *Hidalgo v. Overseas Condado Ins. Agencies, Inc.*, 120 F.3d 328, 337 (1st Cir. 1997). Therefore, an employee has the burden of showing, by a preponderance of the evidence, "that age was the 'but-for' cause of the

---

seeking damages for Mr. Rijos's report to the Puerto Rico Police Department and the investigation that ensued. By November 2015, Mr. Feliciano was thus aware of Mr. Rijos's involvement in that police investigation, yet the first EEOC charge mentioning this event was filed on June 20, 2016. Plaintiffs do not provide an adequate excuse for this delay.

employer's adverse action." *Acevedo-Parrilla v. Novartis Ex-Lax, Inc.*, 696 F.3d 128, 138 (1st Cir. 2012)

(quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).[6]

The framework for proving intentional age discrimination varies depending on the availability of direct evidence. *See id.* "Direct evidence normally contemplates only those statements by a decisionmaker that directly reflect the alleged animus and *bear squarely on the contested employment decision*." *Vesprini v. Shaw Contract Flooring Servs., Inc.*, 315 F.3d 37, 41 (1st Cir. 2002) (quotation marks and citations omitted). It "does not include stray remarks in the workplace, particularly those made by nondecision-makers or statements made by decisionmakers unrelated to the decisional process itself." *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 96 (1st Cir. 1996) (citations omitted).

Here, the record contains no evidence of discriminatory statements made by a decisionmaker directly related to the adverse actions alleged by Plaintiffs.[7] Therefore, absent direct evidence of intentional discrimination, Plaintiffs must meet the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which requires that

---

[6] Because the ADEA only protects "individuals who are at least 40 years of age," 29 U.S.C. § 631(a), any action that took place prior to Mr. Feliciano's 40th birthday on November 3, 2009 is not actionable under the statute. *See* Findings of Fact ¶¶ 31-32, 106-07.

[7] The only instance that could potentially be construed as a discriminatory statement by a decisionmaker occurred in 2014, when the Area Sales Manager stated in a staff meeting that Mr. Feliciano was a "necessary affliction" allegedly after Mr. Feliciano had stated his age and years of service at AT&T. *See* Findings of Fact ¶ 109. However, that statement does not reference Mr. Feliciano's age, and Plaintiffs have failed to tie it to a specific adverse employment action. *See McMillan v. Mass. Soc. for Prevention of Cruelty to Animals*, 140 F.3d 288, 301 (1st Cir. 1998) (noting that the "probativeness [of stray remarks] is circumscribed if they were made in a situation temporally remote from the date of the employment decision, or if they were not related to the employment decision in question.") (citations omitted); *see also Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 36 (1st Cir. 2001) ("[M]ere generalized 'stray remarks,' arguably probative of *bias* against a protected class, normally are not *probative of pretext* absent some discernible evidentiary basis for assessing their temporal and contextual relevance.") (citations omitted).

> the plaintiff must first make out a prima facie case for age discrimination by showing that (i) [he] was at least 40; (ii) [his] work was sufficient to meet the employer's legitimate expectations; (iii) [his] employer took adverse action against [him]; and (iv) either younger persons were retained in the same position upon [his] termination or the employer did not treat age neutrally in taking the adverse action.

*Del Valle-Santana v. Servicios Legales de P.R., Inc.*, 804 F.3d 127, 129-30 (1st Cir. 2015) (citation omitted).

Establishing a *prima facie* case creates a rebuttable presumption of discrimination and shifts the burden to the employer to articulate a legitimate and nondiscriminatory reason for the adverse employment action. *Id.* If the employer meets this burden of production, the presumption vanishes and the plaintiff "must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 824 (1st Cir. 1991) (citations omitted); *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (finding that claimant must prove "*both* that the reason was false, *and* that discrimination was the real reason.").

A claimant can establish pretext in a number of ways, such as by showing (1) that he was treated differently than other similarly situated employees, *see Kosereis v. Rhode Island*, 331 F.3d 207, 213 (1st Cir. 2003); "that discriminatory comments were made by the key decisionmaker or those in a position to influence the decision maker," *Santiago-Ramos*, 217 F.3d at 55 (citation omitted); or that there are "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons," *id.* at 56 (citation omitted). However, "[i]n assessing pretext, a court's focus must be on the perception of the decisionmaker, that is, whether the employer believed its stated reason to be credible." *Azimi v. Jordan's Meats, Inc.*, 456 F.3d 228, 246 (1st Cir. 2006) (quotation marks and citations omitted).

The burden of persuasion to show intentional age discrimination remains with the plaintiff at all times. *Gross*, 557 U.S. at 177. In evaluating a motion for summary judgment, "the critical question is whether or not the plaintiff has adduced minimally sufficient evidence to permit a reasonable factfinder to conclude that he [experienced an adverse employment action] because of his age." *Soto-Feliciano v. Villa Cofresi Hotels, Inc.*, 779 F.3d 19, 25 (1st Cir. 2015) (quotation marks and citation omitted).

Plaintiffs allege both disparate treatment and hostile work environment. The Court will address each in turn before turning to Plaintiffs' retaliation claims.

### A. Disparate Treatment[8]

Defendants argue that Plaintiffs' disparate treatment claims should be dismissed because Plaintiffs have failed to show that his age was the but-for cause of the employer's adverse actions. Docket No. 85 at 11-21. The Court agrees. Considering the record in the light most favorable to Plaintiffs, the Court finds that they have failed to provide sufficient evidence to allow a reasonable inference that age was the motivating factor for the contested employment actions.

The only discrete adverse employment actions that the Court can surmise from Plaintiffs' allegations are (i) Mr. Rijos's decision to contact the Puerto Rico Police Department in response to Mr. Feliciano's November 3, 2014 call to AT&T's Ethics Hotline; (ii) the February 2, 2016 Final

---

[8] The Court notes that Plaintiffs have listed a plethora of allegations as supporting both their disparate treatment claims and their hostile work environment claim. However, disparate treatment claims should be premised on discrete adverse actions, while a hostile work environment claim "must be based on one unlawful employment practice of pervasive, insulting, discriminatory conduct that makes the plaintiff's day-to-day work environment severely abusive." *Moore v. Castro*, 192 F. Supp. 3d 18, 46 (D.D.C. 2016); *see Nat'l R.R. Passenger Corp.*, 536 U.S. at 116, 118. The Court has parsed Plaintiffs' arguments to determine which actions should be analyzed under the disparate treatment claim and which should be analyzed as supporting the hostile work environment claim.

Written Warning; (iii) the failure to promote Mr. Feliciano; and (iv) that, on at least one instance, the Store Manager assigned corporate accounts to other Retail Sales Consultants, but not to Mr. Feliciano. Plaintiffs have failed to put forth any evidence that could show that any of these actions were motivated by Mr. Feliciano's age or that Defendants' proffered reason is pretextual.

First, as to the events surrounding the November 3, 2014 call, assuming *arguendo* that this constitutes an adverse employment action,[9] the record shows that Mr. Rijos contacted the police because he was concerned that Mr. Feliciano posed a threat to himself or others. This is corroborated by the fact that a Retail Sales Consultant informed management that he was worried about Mr. Feliciano's emotional stability and the safety of the store's employees in light of a conversation he had with Mr. Feliciano and the fact that he had seen Mr. Feliciano bring a firearm to the store in the past. *See* Findings of Fact ¶ 63. Mr. Rijos's concerns are further corroborated by an AT&T's Ethics Hotline report and Richard Fernández's statement, both of which state that, during the call, Mr. Feliciano mentioned a female coworker committing suicide, that he was being treated for depression, and that he was contemplating suicide. *See* Findings of Fact ¶¶ 48-62. Considering that AT&T's Ethics Hotline is operated by an independent third party, and that both the hotline operator and Mr. Fernández are located outside Puerto Rico, the record contains no evidence from which a reasonable jury could find that these individuals fabricated these statements, much less that they lied to harass Mr. Feliciano. Indeed, there is no evidence that either the hotline operator or Mr. Fernández ever met Mr. Feliciano. Thus, Defendants have

---

[9] Plaintiffs have pointed to no evidence showing that this action affected Mr. Feliciano's employment.

established a nondiscriminatory reason for Mr. Rijos's action and Plaintiffs have not shown this reason was a pretext for discrimination.[10]

Second, on February 2, 2016, the Store Manager issued a Final Written Warning to Mr. Feliciano because he violated AT&T's Code of Business Conduct (the "COBC"). Plaintiffs have failed to provide any evidence, other than conclusory statements, linking this employment action to Mr. Feliciano's age. Defendants, on the other hand, have shown that this disciplinary action was issued after an AT&T investigation revealed that Mr. Feliciano misused customer information; and worked on a customer's account without the account holder present, in violation of AT&T's COBC. Plaintiffs have not put forth any evidence that would cast doubt on Defendants' basis for issuing the warning.[11] Therefore, Plaintiffs have failed to show causation or pretext.

Third, Plaintiffs also claim that younger employees were promoted to management, while Mr. Feliciano was denied such promotions due to the disciplinary memoranda in his personnel file. This argument is flawed in several respects. First, the only evidence supporting this argument is Mr. Feliciano's deposition testimony. Second, Plaintiffs have failed to put forth evidence challenging the basis for these memoranda, except for their own conclusory allegations that they were unfounded. Third, this failure to promote claim fails as a matter of law because Plaintiffs

---

[10] In an attempt to show pretext, Plaintiffs rely on deposition testimony from 2 Retail Sales Consultants who stated that they never felt threatened by Mr. Feliciano and that the police were never called to their workplace because of Mr. Feliciano. *See* Findings of Fact ¶¶ 70-71. Plaintiffs also argue that Mr. Feliciano had not committed a crime and that there was no restraining order issued against him. *Id*. at ¶ 67. However, this does not, without more, negate that Mr. Feliciano could have been emotionally unstable or expressed suicidal ideations during the November 3, 2014 call.

[11] It is worth noting that Mr. Feliciano filed a grievance with the CWA to challenge this disciplinary action, but the CWA closed the grievance because Mr. Feliciano did not cooperate with the grievance process and because the union found that, based on the available information, it would not prevail in challenging the warning. *See* Findings of Fact ¶ 47.

have not even alleged that Mr. Feliciano applied for an open management position. *See Velez v. Janssen Ortho, LLC*, 467 F.3d 802, 807 (1st Cir. 2006) (noting that failure to promote claims require evidence that the plaintiff applied for an open position). Finally, merely hiring a younger employee does not equate to age discrimination. *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (4th Cir. 1994) (noting that replacing older employees with younger employees is not dispositive of age discrimination); *Turner v. N. Am. Rubber, Inc.*, 979 F.2d 55, 59 (5th Cir. 1992) (same); *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 267 (6th Cir. 1986) (same).

Finally, Plaintiffs claim that, on at least one instance, the Store Manager gave corporate accounts to other Retail Sales Consultants, but not to Mr. Feliciano. *See* Findings of Fact ¶ 118. Once again, the only evidence supporting this claim is Mr. Feliciano's deposition testimony. More importantly, Plaintiffs have failed to articulate why they believe Mr. Feliciano's age was the motivating factor for this conduct.

Plaintiffs have simply failed to show that any of these actions were motivated by age-based discriminatory animus. Not only is the record devoid of any age-related comment by a decisionmaker, but Plaintiffs have failed to provide sufficient evidence to create a genuine issue of fact as to whether Mr. Feliciano was treated differently than similarly situated employees. The only evidence supporting such a claim is (i) that 3 Assistant Store Managers are less than 40 years old; (ii) that 4 Assistant Store Managers have less seniority than Retail Sales Consultant Ramos, who is over 40 years old; (iii) that Ms. Ramos believes that her supervisors targeted her more often than other employees; and (iv) that between 2012 and 2015, the positions of 2 employees, who were older than 40 years old, were eliminated. *See* Findings of Fact ¶¶ 95, 101-102. This is insufficient to show disparate treatment, especially considering the evidence presented by Defendants. The record shows that, between April 2013 and December 2015, only 5 Retail Sales

Consultants from the Plaza Las Américas I store were terminated, and they were all under 40 years of age. *Id.* at 96. AT&T has not terminated any employee from that store since May 1, 2015. *Id.* at 97. Additionally, during the relevant time period, the Store Managers that worked at the Plaza Las Américas I store were older than 40 years of age. *Id.* at 98. In addition, 2 Assistant Store Managers, 6 Retail Sales Consultants, and 3 Sales Support Representatives were older than 40 years of age. *Id.* All these employees continue working at AT&T, except for two who resigned. *Id.* at 99. Finally, Mr. Feliciano remains an active employee at AT&T whose job duties, compensation, commission structure, and benefits have remained unchanged. *Id.* at 6.

Accordingly, making all reasonable inference in favor of Plaintiffs, the Court finds that no reasonable jury could find, by a preponderance of the evidence, the Mr. Feliciano experienced disparate treatment on the basis of age.[12]

---

[12] The Court also notes that Plaintiffs have actually put forth other motivations for the alleged harassment experienced by Mr. Feliciano, including Mr. Feliciano's medical conditions, seniority at AT&T, and his reporting of an extramarital affair between 2 assistant managers. None of these reasons are related to Mr. Feliciano's age and, thus, further weaken Plaintiffs' ADEA claims. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 608-09 (1993) ("The Courts of Appeals repeatedly have faced the question whether an employer violates the ADEA by acting on the basis of a factor, such as an employee's pension status or seniority, that is empirically correlated with age. We now clarify that there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age.") (citations omitted); *Williams v. Gen. Motors Corp.*, 656 F.2d 120, 131 (5th Cir. 1981) ("[S]eniority and age discrimination are unrelated. The ADEA targets discrimination against employees who fall within a protected age category, not employees who have attained a given seniority status. This is borne out, to be sure, by the simple observation that a 35-year old employee might have more seniority than a 55-year old employee.").

B. **Hostile Work Environment**

Defendants also argue that Plaintiffs' hostile work environment claim fails because they lack sufficient evidence to establish the required degree of severity or pervasiveness. Docket No. 85 at 21-29. The Court agrees.

To succeed on a hostile work environment claim, Plaintiffs must

> must provide sufficient evidence from which a reasonable factfinder could determine that the workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of . . . [his] employment and create an abusive working environment. The offensive conduct, in other words, must be [(1)] severe [or] pervasive enough to create an objectively hostile or abusive work environment and [(2)] subjectively perceived by the victim as abusive.

*Rivera-Rivera v. Medina & Medina, Inc.*, 898 F.3d 77, 91 (1st Cir. 2018) (quotation marks and citation omitted). A court assessing whether a plaintiff has made such a showing "look[s] to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 116 (quotation marks and citation omitted).

Plaintiffs put forth a multitude of incidents to support their hostile work environment claim. First, they allege that fellow Retail Sales Consultants would call Mr. Feliciano old, that his birth certificate was "written in stone," and that he should retire.[13] Plaintiffs then fault

---

[13] Mr. Feliciano also claims that, on an unspecified date, his new truck was scratched "side-to-side" at the Plaza Las Américas parking garage, but admits not knowing who was responsible for this, simply stating that he assumes it was done by another AT&T employee because he or she wanted his work schedule. Not only is this an entirely speculative claim, but a dispute over work schedules is not age-related.

management for failing to take corrective action, without even alleging that Mr. Feliciano reported these issues to his supervisors. Plaintiffs also claim that management repeatedly issued disciplinary observations and memoranda that were either frivolous—relying entirely on Mr. Feliciano's conclusory statements to support this point—or not intended for him. They further argue that Mr. Feliciano's supervisors refused to change damaged company equipment on at least 3 instances, changed his work schedule without notice, would not help him when he requested assistance, met with Mr. Feliciano twice to discuss disciplinary actions without the presence of a union representative, once summoned him to a meeting on his day off, would not fix his attendance record but would do so for other employees, and once referred to him as a "necessary affliction"[14] after Mr. Feliciano stated his age and years of service at AT&T.

These incidents are insufficient to establish a hostile work environment. First, none of these events are threatening or objectively humiliating. Second, Plaintiffs have not put forth sufficient factual allegations to show that this actions unreasonably interfered with Mr. Feliciano's work performance. Third, these allegations are not sufficiently severe, and the record provides no insight as to the frequency of this conduct. *See Rivera-Rivera*, 898 F.3d at 93 (noting that "being called 'vieja' or 'worthless' on discrete, isolated occasions might not rise to the level of severity necessary to demonstrate an objectively hostile work environment" unless they are sufficiently frequent and finding sufficient frequency where the plaintiff "produce[d] evidence that she was taunted about her age nearly *every single day* for over two years."). Fourth, Plaintiffs have not explained why they believe management's conduct was motivated by age-based

---

[14] Plaintiffs, however, admit that this supervisor was admonished for this comment at a later meeting.

discriminatory animus.[15] *See Rivera-Rivera*, 898 F.3d at 92 (noting that the plaintiff must "tie her mistreatment to her membership in a protected class.").[16] "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment to establish an objectively hostile or abusive work environment." *Rivera-Rivera*, 898 F.3d at 93 (quotation marks and citation omitted). Plaintiffs have failed to put forth sufficient evidence to show anything more than teasing and isolated incidents. For these reasons, Plaintiffs' hostile work environment claim is hereby **DISMISSED WITH PREJUDICE**.

### C. Retaliation

Plaintiffs' similarly fail to adduce sufficient evidence for their retaliation claims to survive summary judgment. The ADEA's anti-retaliation provision provides that

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment . . . because such individual . . . has opposed any practice made unlawful by this section, or . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

---

[15] In fact, some of Plaintiffs' allegations include incidents that occurred before Mr. Feliciano turned 40 years old. *See* Findings of Fact ¶¶ 106-108. The fact that Plaintiffs themselves argue that Mr. Feliciano began to experience mistreatment or harassment before his 40th birthday suggests that age was not the but-for cause of the conduct at issue in this case.

[16] It is also noteworthy that Plaintiffs have seemingly been unable to find a single witness to corroborate that this conduct indeed occurred and Mr. Feliciano's deposition testimony as to these events is insufficiently supported with particularized factual information. *See Perez v. Volvo Car Corp.*, 247 F.3d 303, 316 (1st Cir. 2001) ("Affidavits purporting to describe meetings or conversations need not spell out every detail, but to receive weight at the summary judgment stage they must meet certain rudiments. Statements predicated upon undefined discussions with unnamed persons at unspecified times are simply too amorphous to satisfy the requirements of Rule 56(e), even when proffered in affidavit form by one who claims to have been a participant." (citations omitted).

29 U.S.C. § 623(d). The *McDonnell Douglas* burden-shifting framework also applies to ADEA

retaliation claims. *Soto-Feliciano*, 779 F.3d at 30. To establish a *prima facie* case of retaliation, Mr.

Feliciano must show that "(i) he engaged in ADEA-protected conduct, (ii) he was thereafter

subjected to an adverse employment action, and (iii) a causal connection existed between the

protected conduct and the adverse action." *Id.* If Plaintiffs make this showing, "the burden of

production shifts to the defendant . . . [who] must offer a legitimate, non-retaliatory reason for the

adverse employment action." *Id.* (citation omitted). However, "the ultimate burden falls on the

plaintiff to show that the employer's proffered reason is a pretext masking retaliation." *Ramirez*

*Rodriguez v. Boehringer Ingelheim Pharms., Inc.*, 425 F.3d 67, 84 (1st Cir. 2005) (quotation marks and

citation omitted). To survive summary judgment, though, Plaintiffs "bear[] only the lighter

burden of showing that a genuine issue of material fact exists about whether retaliation was the

true motive for the adverse employment action in question." *Soto-Feliciano*, 779 F.3d at 31.

Turning to the facts of this case, Plaintiffs argue the following in support of their

retaliation claims

> Feliciano was given a disciplinary memo on his birthday and at
> various times was subjected to unwarranted/unintended
> disciplinary actions, while under protected age group employees
> were chosen for management opportunities, and over protected age
> group employees were targeted for unjustified disciplinary actions
> by Assistant Store Manager . . . Adverse employment action was
> taken, shortly after Feliciano complained of a hostile work
> environment, when under protected age group ASM falsely
> prosecuted him with threats of disciplinary actions.

Docket No. 95-2 at 40-41. Plaintiffs also contend that (i) Mr. Rijos's decision to contact the police

after Mr. Feliciano's November 3, 2014 call to AT&T's Ethics Hotline and (ii) the February 2, 2016

Final Written Warning were retaliatory acts.

As an initial matter, it appears that the first time Mr. Feliciano complained about age-based discrimination and harassment was on December 9, 2015 when he filed his first EEOC charge.[17] The ADEA's anti-retaliation provision "protects individuals who invoke the statute's protections." *Ramirez Rodriguez*, 425 F.3d at 84. Therefore, the Court questions whether any of Mr. Feliciano's complaints prior to December 9, 2015 qualify as ADEA-protected conduct considering that they do not mention discrimination based on *age*. In any case, Plaintiffs have failed to show a causal nexus between his protected conduct and the adverse employment actions.

As to the incidents surrounding Mr. Feliciano's November 3, 2014 Ethics Hotline call and the February 2016 Final Written Warning, as discussed above, *supra* at III.A, Defendants have provided legitimate, non-discriminatory reasons for these actions and Plaintiffs have failed to show these are pretextual. What is more, Plaintiffs admitted that Mr. Rijos did not have personal knowledge of the contents of Mr. Feliciano's conversations with AT&T's Ethics Hotline, other than the information that was relayed to him, meaning that Mr. Rijos did not know that Mr. Feliciano had complained about management on a prior call. That alone is sufficient to defeat Plaintiffs' claim that Mr. Rijos's call to the police was retaliatory.

Regarding the February 2016 Final Written Warning, the investigation supporting this disciplinary step commenced before Mr. Feliciano filed the December 2015 EEOC charge. The record shows that the person responsible for this investigation conducted interviews on November 6 and December 4, 2015. *See* Findings of Fact ¶ 46. Moreover, Plaintiffs have pointed to no evidence showing that the Store Manager who issued this Final Written Warning was aware

---

[17] Plaintiffs have not pointed to any earlier instance when Mr. Feliciano claimed that the harassment he was complaining about was due to his age, nor has the Court found any such allegation in the reports of his calls to AT&T's Ethics Hotline.

that Mr. Feliciano had filed an EEOC charge. Plaintiffs cannot allege that Defendants retaliated against Mr. Feliciano for engaging in protected conduct without showing that Defendants knew about the protected conduct. *See Planadeball v. Wyndham Vacation Resorts, Inc.*, 793 F.3d 169, 177 (1st Cir. 2015) ("[T]here must be proof that the decisionmaker knew of the plaintiff's protected conduct when he or she decided to take the adverse employment action.").

With regard to the remaining allegations, they are conclusory or simply too vague. Plaintiffs do not specify the protected conduct that allegedly motivated these actions, nor do they make any effort to show how these actions are causally connected to that protected conduct. *See, e.g.*, *Rivera-Rivera*, 898 F.3d at 95 (finding summary judgment unwarranted where the plaintiff presented evidence that her employer threatened her with termination on a daily basis specifically because she reported him for alleged discrimination).

Plaintiffs' evidence of retaliatory motive rests on temporal proximity alone. While in certain cases that may be enough to raise a genuine issue of fact as to a retaliation claim, it is not so in this case because Defendants have provided ample evidence of a legitimate, nondiscriminatory motive for its actions. *Ramirez Rodriguez*, 425 F.3d at 85 ("[C]hronological proximity does not by itself establish causality, particularly if [t]he larger picture undercuts any claim of causation.") (quotation marks and citation omitted). In sum, Plaintiffs have not presented evidence from which a reasonable jury could infer that Defendants retaliated against him for engaging in ADEA-protected activity. Accordingly, Plaintiffs' retaliation claims are **DISMISSED WITH PREJUDICE**.

## IV.   Second Amendment Claim

Plaintiffs also allege that Defendants infringed Mr. Feliciano's Second Amendment right to bear arms. Docket No. 34 at 11. However, "the constitutional right to bear arms restricts the actions of only the federal or state *governments* or their political subdivisions, not private actors." *Fla. Retail Fed'n, Inc. v. Attorney Gen. of Fla.*, 576 F. Supp. 2d 1281, 1295 (N.D. Fla. 2008) (citations omitted); *see United States v. Cruikshank*, 92 U.S. 542, 553 (1875) (noting that the Second Amendment "has no other effect than to restrict the powers of the national government."); *Caetano v. Massachusetts*, 136 S. Ct. 1027, 1028 (2016) (citations omitted) ("It is settled that the Second Amendment protects an individual right to keep and bear arms that applies against both the Federal Government and the States.") (Alito, J. and Thomas, J., concurring) (citations omitted). Where no state action is involved, a Second Amendment claim cannot survive. *See Bruley v. Vill. Green Mgmt. Co.*, 592 F. Supp. 2d 1381, 1387 (M.D. Fla. 2008), *aff'd sub nom. Bruley v. LBK, LP*, 333 F. App'x 491 (11th Cir. 2009). For this reason, Plaintiffs' Second Amendment claim is hereby **DISMISSED WITH PREJUDICE**.

## V.   Supplemental State Law Claims

### A.  Law 100 and Law 115 Claims

The Parties agree that claims under Law 100 and Law 115 are subject to the same analysis as their federal counterparts. Docket Nos. 85 at 36-37; 95-2 at 41. Specifically, "[o]n the merits, age discrimination claims asserted under the ADEA and under Law 100 are coterminous." *Davila v. Corporacion de P.R. para la Difusion Publica*, 498 F.3d 9, 18 (1st Cir. 2007). Similarly, "ADEA and Law 115 retaliation claims are similar and have parallel evidentiary mechanisms." *Baerga-Castro v. Wyeth*

*Pharm.*, 2009 WL 2871148, at *13 (D.P.R. Sept. 3, 2009); *Sanchez Borgos v. Venegas Const. Corp.*, 2009

WL 928717, at *6-7 (D.P.R. Mar. 31, 2009). As such, the Court **DISMISSES WITH PREJUDICE**

Plaintiffs' Law 100 and Law 115 claims for the same reasons it dismisses Plaintiffs' ADEA claims.

*See supra* III.

### B.  Right to Privacy

Plaintiffs also allege that Defendant's encroached on their constitutional right to privacy.

Docket No. 34 at 11. However, Plaintiffs have not even attempted to identify the relevant

constitutional provision, nor have they put forth an adequate argument as to why Defendants

should be found liable under this theory. In fact, the section addressing this claim in Plaintiffs'

Opposition consists of 3 sentences:

> Both co-plaintiffs Salva and his daughter, minor G.F.S.[,] have
> viable claims for violation of their right to privacy, when Feliciano's
> employer sent the police to their home without justification. Co-
> plaintiff Salva, Feliciano's companion, was interrogated by police
> officers in presence of their daughter. Salva testified on behalf of
> Feliciano at the Police Department administrative hearing.

Docket No. 95-2 at 42. This is wholly insufficient to survive summary judgment. "[I]ssues

adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation,

are deemed waived. It is not enough merely to mention a possible argument in the most skeletal

way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh

on its bones." *Vargas-Colón v. Fundación Damas, Inc.*, 864 F.3d 14, 24 (1st Cir. 2017) (quoting *United

States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)). Accordingly, Plaintiffs' right to privacy claim is

hereby **DISMISSED WITH PREJUDICE**.

### C. Malicious Prosecution

Plaintiffs allege malicious prosecution based on Mr. Rijos's decision to contact the Puerto Rico Police Department in response to Mr. Feliciano's November 3, 2014 call to AT&T's Ethics Hotline. Docket No. 34 at 11-13. "Malicious prosecution is the unjustified use of legal proceedings." *Segarra Jimenez v. Banco Popular, Inc.*, 421 F. Supp. 2d 452, 459 (D.P.R. 2006). Under Puerto Rico law, such a claim is brought under Article 1802 and requires "(i) the institution and instigation of criminal proceedings against the claimant; (ii) maliciously and without probable cause; (iii) which ended favorably for the claimant; and (iv) whereby the claimant suffers damages." *Abreu-Guzman v. Ford*, 69 F. Supp. 2d 274, 285 (D.P.R. 1999) (citations omitted), *aff'd* 241 F.3d 69 (1st Cir. 2001).

Plaintiffs have failed to meet the first prong. "Criminal proceedings are not commenced until process is issued to bring the accused before a judicial officer, the accused is arrested, or an indictment is returned or an information is filed against him." *Boschette v. Buck*, 916 F. Supp. 91, 96 (D.P.R. 1996) (citing Restatement (Second) of Torts § 654 (1977)). Plaintiffs have not shown that Mr. Feliciano was arrested, brought before a judicial officer, or indicted. Moreover, the mere fact that Mr. Rijos "furnish[ed] information to a . . . policeman . . . does not constitute by itself the instigation which is required as element of this action," *Raldiris, Etc., Et Al, Demandantes Y Recurridos v. Levitt & Sons of P.R., Inc.*, 3 P.R. Offic. Trans. 1087, 1092 (1975).

Plaintiffs have likewise failed to show malice. "[M]alice is not presumed," so a plaintiff "must prove that defendant acted maliciously and without the existence of probable cause." *Id.* at 1093. Probable cause in this context has been defined as a "suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true." *Abreu-Guzman*,

69 F. Supp. 2d at 285 (citation omitted). As discussed above, *supra* at III.A, the record does not support the conclusion that Mr. Rijos acted maliciously. Instead, it shows that Mr. Rijos had ample basis to be concerned about Mr. Feliciano's emotional state and, thus, was justified in alerting the police, especially since he knew that Mr. Feliciano owned a firearm. *See* Findings of Fact ¶¶ 53-66. For these reasons, Plaintiffs' malicious prosecution claim is hereby **DISMISSED WITH PREJUDICE**.

### D. Defamation

Plaintiffs' defamation claim is also based on Mr. Rijos's decision to contact the Puerto Rico Police Department in response to Mr. Feliciano's November 3, 2014 call. Docket Nos. 34 at 11-13; 95-2 at 43-44. Defendants also seek dismissal of this claim, Docket No. 85 at 40-42, and the Court agrees. Defamation under Puerto Rico law "requires that the plaintiff prove (1) that the information is false, (2) that plaintiff suffered real damages, and (3) in the case of a private figure plaintiff, that the publication was negligent." *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 98 (1st Cir. 1996) (citations omitted). Because Plaintiffs have not shown that Mr. Rijos' statements to the police were false or negligently made, *see supra* at III.A, Plaintiffs' defamation claim fails and must, thus, be **DISMISSED WITH PREJUDICE**.

### E. Intentional Infliction of Emotional Distress

Finally, Plaintiffs allege that Defendants are liable for intentional infliction of emotional distress pursuant to Puerto Rico law. Docket No. 34 at 10-11. The Court disagrees.

Liability under this cause of action requires a showing "1) that the defendant engaged in extreme and outrageous conduct; 2) that such conduct was intended to cause the plaintiff severe emotional distress, or was done with reckless disregard for the plaintiff's emotional state; 3) that

the plaintiff suffered severe emotional distress; and 4) that the severe distress is causally related to the extreme and outrageous conduct." *Soto-Lebron v. Fed. Express Corp.*, 538 F.3d 45, 57 (1st Cir. 2008) (citations omitted). Even accepting Plaintiffs' proffered version of the events as true, Plaintiffs have simply failed to show that Defendants engaged in conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 58 (citations omitted). Accordingly, Plaintiffs' intentional infliction of emotional distress claim is hereby **DISMISSED WITH PREJUDICE**.

## CONCLUSION

For the aforementioned reasons, Defendants' Motion for Summary Judgment, Docket No. 85, is hereby **GRANTED** and Plaintiffs' case is hereby **DISMISSED WITH PREJUDICE**. Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, March 31, 2019.

<u>s/ Jay A. Garcia-Gregory</u>
JAY A. GARCIA-GREGORY
United States District Judge